[No. B045830. Second Dist., Div. Four. July 24, 1990.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ALFREDO RUIZ HERNANDEZ, Real Party in Interest.

## COUNSEL

George McDonald, Greines, Martin, Stein & Richland, Martin Stein and Timothy T. Coates for Petitioner.

No appearance for Respondent.

Emmett J. Gantz and Craig D. Rackohn for Real Party in Interest.

## OPINION

**GOERTZEN, J.**—Petitioner/defendant County of Los Angeles (the County) moved for a protective order and to disqualify the attorney of plaintiff/real party in interest Alfredo Ruiz Hernandez (plaintiff). The County sought to prevent plaintiff from designating the County's formerly designated expert witness as his expert witness and to remove plaintiff's counsel. Upon denial of its motion and award of $750 in attorney fees/costs to plaintiff, the County petitioned this court for extraordinary relief, which we granted. The issue we are asked to resolve is: May a party withdraw its designation of an expert trial witness, who is not yet deposed and who remains as that party's consultant, and thereby preclude the deposition of that expert as well as his or her retention as an expert in the action by adverse parties? For the reasons discussed below, we answer affirmatively.

### RECORD

On March 6, 1985, plaintiff filed a complaint for medical malpractice against the County and others.[1] The County answered on May 3, 1985, and on July 14, 1989, served its designation of expert witnesses. (Code Civ. Proc., § 2034.)[2] Among the experts designated was M. Anthony Verity, M.D., a board certified pathologist.

---

[1] Though not revealed in the complaint, papers subsequently submitted to the court indicate that the gist of plaintiff's suit is that he suffered "organic brain damage, memory loss, speech impediment, and other neurological deficits" because his subdural hematoma was not timely diagnosed.

[2] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

On July 17, 1989, plaintiff filed his designation of expert witnesses and did not designate a pathologist to testify at trial.

After the original deposition date was continued, on July 27, 1989, plaintiff served notice of Dr. Verity's deposition for August 8, 1989.

On August 1, the County served its amendment to designation of expert witnesses, withdrawing Dr. Verity as an expert and reserving its right to designate an expert in the same area of expertise of pathology and neuropathology.[3]

On August 8, 1989, plaintiff served an augmentation of expert witness list, stating his intention to call Dr. Verity as an expert witness at trial.

Subsequently, both parties filed several motions. In order of filing they are:

(1) *County's Motion for Protective Order and Disqualification of Counsel.*

(a) County's Moving Papers. Upon successfully moving for an order shortening time, on August 16, 1989, the County filed a motion for protective order and disqualification of plaintiff's counsel. The County argued (1) that plaintiff's designation of Dr. Verity as an expert was improper within the meaning of section 2034, subdivision (h); and (2) that while Dr. Verity had been removed as an expert witness for the trial, he remained as a consultant to the County for purposes of this litigation; unknown to the County's attorneys, plaintiff's law firm had a substantive ex parte communication with Dr. Verity; as a result of that interview with Dr. Verity, plaintiff's attorneys had obtained privileged work product information; consequently, plaintiff's counsel should be disqualified and any expert to whom information imparted by Dr. Verity had been given should be precluded from testifying.

Included in the County's moving papers were the sworn declarations of Dr. Verity, and attorney John Zanghi. Dr. Verity's declaration related the following facts surrounding his withdrawal as an expert witness for the County. On February 16, 1989, he was engaged by the law firm representing the County. Since that date, he had discussed his opinion of the case with members of the firm and had advised the firm of the need for further scientific study. On July 27, 1989, he met with John Zanghi, an attorney

---

[3] In toto, the County's amendment states: "Defendant COUNTY OF LOS ANGELES hereby withdraws as a designated expert M. Anthony Verity, M.D. Defendant COUNTY OF LOS ANGELES reserves the right to designate an expert in the same area of expertise of pathology and neuropathology."

from the County's firm, to discuss the case and Dr. Verity's opinions. Mr. Zanghi indicated to Dr. Verity that his testimony might not be required at trial "but that [counsel] would appreciate being able to consult further with [Dr. Verity] in preparation for the trial." On August 8, 1989, plaintiff's counsel, Emmett J. Gantz, telephoned and informed Dr. Verity that since his services were no longer required by the County and the County had withdrawn him as an expert, Dr. Verity was "now at liberty to be engaged" by the plaintiff. Dr. Verity advised Mr. Gantz that he "had doubts over the propriety of accepting engagement by and on behalf of the Plaintiff." Mr. Gantz assured Dr. Verity that he "was at liberty to be engaged" by Mr. Gantz's firm. Later that day, Dr. Verity met with Mr. Gantz and Mr. Gantz's associate, Craig D. Rackohn, to discuss the case. They discussed a report that Dr. Verity had previously prepared for the firm representing the County, and Dr. Verity informed Mr. Gantz of the contents of that report.

Mr. Zanghi's declaration confirmed Dr. Verity's statements regarding his retention as an expert witness, subsequent withdrawal and continuation as a consultant to the County. In addition, the declaration explained that Mr. Zanghi informed Dr. Verity that his services as a consultant would assist Mr. Zanghi in preparing for the cross-examination of plaintiff's expert witnesses, that Dr. Verity agreed to so consult, and that Dr. Verity retained copies of pertinent parts from the medical records so that he would be able to assist Mr. Zanghi.

(b) Plaintiff's Opposition. On August 18, 1989, plaintiff filed his opposition to the County's motion for protective order and to disqualify plaintiff's counsel and experts. Plaintiff contended that by withdrawing its designated expert, the County was attempting to suppress relevant evidence and, consequently its motion should be denied; and that his counsel had not violated any ethical rules of professional conduct when he had ex parte contact with Dr. Verity because the County's notice of withdrawal had not indicated that Dr. Verity was to remain as a consultant to the County and, therefore, constituted a waiver of any right to so retain him. The opposition papers did not contain a request for imposition of sanctions or for attorney fees.

Included in plaintiff's opposition papers were the declarations of attorney Emmett J. Gantz and his associate, Craig D. Rackohn. Mr. Gantz related his version of the August 8, 1989, meeting with Dr. Verity. He declared that at that meeting Dr. Verity advised Mr. Gantz that he was unaware that he had been withdrawn as an expert for the County; during the meeting, Mr. Gantz informed Dr. Verity that Mr. Gantz "did not care to discuss any conversations between himself [Dr. Verity] and any of the attorneys representing the County"; he asked Dr. Verity if he had reviewed the plaintiff's

medical records and certain pathology slides; Dr. Verity advised Mr. Gantz that he had reviewed the pathology report and the slides and related the opinion he had formed based upon the report and slides. Dr. Verity agreed to testify as an expert for plaintiff, and Mr. Gantz gave him a $250 check.

Mr. Rackohn's declaration corroborated Mr. Gantz's version of the meeting with Dr. Verity.

(2) *Plaintiff's Motion to Strike and to Augment.*

(a) Plaintiff's Moving Papers. On August 21, 1989, upon successfully moving for orders shortening time, plaintiff (1) moved to strike the County's withdrawal of Dr. Verity, arguing that the withdrawal was contrary to the provisions of section 2034 and requesting imposition of $514 in sanctions; and (2) moved to augment his expert witness list to include Dr. Verity.

(b) County's Opposition. On August 29, 1989, the County filed, inter alia, (1) its opposition to plaintiff's motion to strike the County's withdrawal and request for sanctions; and (2) its opposition to plaintiff's motion to augment his expert witness list to include Dr. Verity, reiterating its argument that to permit plaintiff to designate Dr. Verity as an expert witness would result in the disclosure of information falling within the attorney work product privilege.

(c) Codefendant's Opposition. On August 28, 1989, codefendant Joel E. Arroyo, M.D., filed his opposition to plaintiff's motion to strike the County's withdrawal and plaintiff's motion to augment his expert witness list.

All motions came on for hearing on September 1, 1989. After hearing argument, the court (respondent) denied the County's motion to disqualify plaintiff's counsel, as well as its motion for a protective order preventing plaintiff from designating Dr. Verity as an expert witness; granted plaintiff's motion to augment his expert witness list to include Dr. Verity; awarded plaintiff $750 in costs; and placed all other motions off calendar.

Upon the County's petition for relief, we ordered respondent to vacate its order, issued an alternative writ, and temporarily stayed further proceedings.

DISCUSSION

The County asserts that Dr. Verity's opinions about the case constitute the County's attorney's work product; consequently, Dr. Verity may not be

called as an expert witness by plaintiff; and respondent erred in awarding $750 in attorney fees because the award was without notice as required by section 2023 and the due process clauses of the state and federal Constitutions, and the County had substantial justification in seeking to preserve its work product privilege.

*The Work Product Privilege.* The policy of this state regarding an attorney's work product has been codified in section 2018. ■ ■■■ In pertinent part, it provides: "(a) It is the policy of the state to: (1) preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases; and (2) to prevent attorneys from taking undue advantage of their adversary's industry and efforts. [¶] (b) Subject to subdivision (c), the work product of an attorney is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice.[4] [¶] (c) Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances. [¶] (d) This section is intended to be a restatement of existing law relating to protection of work product. It is not intended to expand or reduce the extent to which work product is discoverable under existing law in any action." ■ The work product privilege insures that "a party cannot substitute the wits of his adversary's expert for wits of his own in analyzing the case. [Citation.]" (*Swartzman* v. *Superior Court* (1964) 231 Cal.App.2d 195, 203 [41 Cal.Rptr. 721].)

It has long been recognized that the work of an expert-consultant is protected by the attorney's work product privilege. (*Williamson* v. *Superior Court* (1978) 21 Cal.3d 829, 834 [148 Cal.Rptr. 39, 582 P.2d 126]; *Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7, 11 [66 Cal.Rptr. 280]; *Swartzman* v. *Superior Court, supra,* 231 Cal.App.2d at p. 202.) Under discovery rules, however, once it appears reasonably certain that the consultant-expert "will

[4] Plaintiff did not make the showing of "good cause" which has been held to permit supersession of the privilege. The "good cause" exception to the work product privilege has come to mean that there exists "no adequate substitute" for the material generated by the expert. (*Petterson* v. *Superior Court* (1974) 39 Cal.App.3d 267, 272 [114 Cal.Rptr. 20].) Here, the only statements regarding the rarity of Dr. Verity's expertise were included in attorney Rackohn's declaration, where he declared that Dr. Verity had related that he "was one of a handful of neuropathologists in the State of California and one of two neuropathologists in the City of Los Angeles" and that the other neuropathologist was employed by the County. This hearsay statement is insufficient. No competent evidence was presented about the specific number of potential experts in the area discussed or about the undue expense, if any, involved in contacting the other experts who reside in California. These statements fall short of the showing required to overcome the work product privilege.

give his [or her] professional opinion as a witness on a material matter in dispute," the attorney's work product privilege terminates and the expert's knowledge and opinions are subject to discovery and disclosure. (*Swartzman* v. *Superior Court, supra*, 231 Cal.App.2d at p. 203, citing, inter alia, *San Diego Professional Assn.* v. *Superior Court* (1962) 58 Cal.2d 194 [23 Cal.Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761].)

Here, we must resolve: (1) whether Dr. Verity's report is part of the County's attorneys' work product; and (2) whether the County may withdraw Dr. Verity as a trial expert, thereby precluding his deposition as well as his appearance as an expert witness for plaintiff. We answer both in the affirmative.

■ (1) The Report as Work Product. Any report prepared by Dr. Verity at the behest of the County's attorneys in preparation for trial is part of the attorneys' work product. (See *Williamson* v. *Superior Court, supra*, 21 Cal.3d at p. 834.) Plaintiff objects, arguing that his attorneys told Dr. Verity that they were not interested in any conversations Dr. Verity had had with County's attorneys and that Dr. Verity's opinion had been based on his review of the hospital records and slides. This assertion fails because it is premised on a total rejection of Dr. Verity's declaration.[5] In his declaration, Mr. Gantz, plaintiff's attorney, does not directly deny Dr. Verity's statement that Dr. Verity discussed with Mr. Gantz the report he had previously prepared for County's attorneys. Instead, as noted above, Mr. Gantz's declaration states he told Dr. Verity that he "did not care to discuss any conversations between" Dr. Verity and County's attorneys; and he asked Dr. Verity about his review of the pathology report and slides. Noticeably absent is a statement that the discussion was limited *only* to the pathology report and slides or that Dr. Verity, in fact, did *not* discuss "conversations" with County attorneys. Moreover, this contention fails to acknowledge that Dr. Verity obtained the pathology report and pathology slides from County's attorneys in his role as a consultant for the County in preparation for trial.

(2) The Propriety of the Withdrawal. Both parties cite the *Williamson, supra,* case to support their respective positions. In *Williamson,* one defendant's designated expert opined in a written report that the injury upon which the suit was based was due to the negligent design of the second defendant's product. The two defendants reached an agreement whereby

---

[5] It appears from the record that the court completely discounted Dr. Verity's declaration because it had been prepared by the firm representing the County. We are not so inclined. No one alleges that Dr. Verity did not read, did not understand, and did not sign the declaration which he executed under penalty of perjury. There is no valid reason to discard Dr. Verity's declaration.

the first defendant would withdraw the expert and not make his report available to plaintiff on the condition that the second defendant would indemnify the first against any liability it might incur arising from plaintiff's injuries. Finding that the two defendants' interests were adverse to one another, the court concluded that the agreement was one to suppress evidence and, consequently, void as against public policy. (*Williamson* v. *Superior Court, supra,* 21 Cal.3d at p. 836.) Noting that "a party may, indeed, enjoy the right to withdraw an expert witness at any time prior to disclosure of that witness' proposed testimony" (*Id.*, at p. 835) and thereby reestablish the work product privilege, the court held that withdrawal of an expert witness pursuant to an indemnification agreement did not reestablish the privilege. (*Id.*, at p. 832.)

■ We reject plaintiff's assertion that, under *Williamson,* the County must be barred from withdrawing Dr. Verity because it is doing so only to suppress evidence. The facts in the instant case differ dramatically from *Williamson.* Here, we have one party's attorneys consulting with an expert to "investigate not only the favorable but the unfavorable aspects" of the case. (§ 2018.) No parties with adverse interests entered into an agreement supported by valid consideration to suppress evidence. (Compare *Williamson* v. *Superior Court, supra,* 21 Cal.3d at p. 836.) We do have one party who, for tactical reasons and in its *own* interest, has chosen not to call one of its witnesses. Under these circumstances, there simply is no requirement that a party call a particular witness. Given these facts, we conclude, therefore, the County could withdraw its previously designated witness before his deposition.

Plaintiff also contends that the withdrawal must fail because it was not pursuant to a *noticed* motion. We find, however, that the discovery statute does not include a notice requirement as a prerequisite to withdrawal of an expert witness.

We next consider whether after having properly withdrawn Dr. Verity as an expert witness, the County can bar plaintiff from making him plaintiff's witness. Both Dr. Verity and the County attorneys declared that Dr. Verity had been consulting with the County's attorneys since he had been retained on February 16, 1989; and that Dr. Verity and the County's attorneys agreed that this consultation would continue after Dr. Verity's withdrawal as a trial witness. Plaintiff counters that since the County's notice of withdrawal of expert did not inform him that Dr. Verity was continuing as an expert-consultant for County, he had no notice of the continuing relationship and was free to retain Dr. Verity as his expert. Again, the facts of this case compel us to disagree.

In addition to the facts related above, Dr. Verity also declared that when plaintiff's counsel approached him, he advised plaintiff's counsel that he "had doubts over the propriety of accepting engagement by and on behalf of the Plaintiff"; and that while "in substance, [he] informed Mr. Gantz of the contents" of the report prepared for County's attorneys, "[a]t no time during [the] discussions with Emmett Gantz was [he] advised that any opinions, advise [*sic*] and reports prepared for" the County's firm "for which [he] was compensated was the work product" of that firm.

In his declaration, Mr. Gantz stated that when he met with Dr. Verity, Dr. Verity was unaware that he had been withdrawn as an expert for the County. Mr. Gantz does not deny or contradict Dr. Verity's statement that Dr. Verity expressed doubts about the propriety of becoming an expert for plaintiff.

When faced with these facts, the court below incorrectly focused on Dr. Verity's sophistication, apparently placing responsibility upon Dr. Verity for the conflict which had arisen.[6] Instead, the focus should have been placed on Mr. Gantz, the experienced attorney. Even if we were to ignore Dr. Verity's statement about the doubts he expressed to Mr. Gantz, we are still left with Mr. Gantz's statement that Dr. Verity was unaware that he was no longer an expert witness. This, alone, should have warned counsel that Dr. Verity was unsure of his status. This "warning" coupled with the fact that plaintiff's attorneys were aware of the previous relationship between Dr. Verity and the County should have prompted Mr. Gantz to communicate with the County in order to clarify the situation.

To the detriment of County as well as his client, Mr. Gantz erred when he pursued Dr. Verity and attempted to make him plaintiff's expert. Likewise, respondent erred when it condoned this action. We hold that a party may, for tactical reasons, withdraw a previously designated expert witness, not yet deposed. If that expert continues his or her relationship with the party as a consultant, the opposing party is barred from communicating

---

[6] During argument on this point, the following colloquy between the County's attorney and the court occurred: "THE COURT: . . . isn't it up to you and Dr. Verity to say, 'When someone calls and says you have been withdrawn,' that Dr. Verity should then say, 'Hey, I'm sorry, I'm really sorry, I'd like to talk to you, but I'm being paid by the County, and, because of their payment to me for reviewing these, they're also paying me for my silence. And, therefore, I will not say anything to you'? [¶] But he didn't say that. [¶] [COUNTY ATTORNEY]: As Dr. Verity stated in his declaration, he had reservations, significant reservations, about speaking with plaintiff's attorneys as plaintiff's attorneys contacted him. But only because plaintiff's attorneys emphatically reassured Dr. Verity that it was appropriate to speak with him—[¶] THE COURT: Dr. Verity is just a guy off the turnip truck. He's not an intelligent person? . . . . He hasn't gone through high school, hasn't gone through college, hasn't gone through medical school, hasn't done all of these things? And are you telling me that he is so dumb that he says, 'Well, I just relied upon what this guy told me'?"

with the expert and from retaining him or her as the opposing party's expert. To conclude otherwise would produce two undesirable results: a designated expert subsequently withdrawn could "sell" his or her opinions to the highest bidder and be free of concern about whether his or her previous consultation is protected by the work product privilege; and a party would never withdraw a previously designated expert for fear that the attorney's work product (i.e., the consultations with the withdrawn expert) would become available to the opposition.

■ When an attorney violates this rule, he or she must be recused. Having become privy to an opposing attorney's work product, there is no way the offending attorney could separate that knowledge from his or her preparation of the case.

We are aware that a motion to disqualify can and does cause hardship to the client or clients of a disqualified attorney. "[U]ltimately the issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility. 'The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. . . . [The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of our judicial process.' [Citation.]" (*Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562].)

The County also has requested that any of plaintiff's expert witnesses who might have received privileged information be similarly barred from the case. The record before us does not provide enough information upon which to fashion such a ruling, and we are not convinced that another expert would necessarily alter his or her opinion merely because Dr. Verity's opinion was repeated secondhand. Consequently, we leave it to the trial court to determine if the privileged information was relayed to other experts and, if so, if those experts modified their respective opinions so as to necessitate their disqualifications.

*Attorney Fee Award.* As we have determined that the County was justified in seeking the protective order, we find respondent abused its discretion when it awarded plaintiff $750 in attorney fees.

## CONCLUSION

Let the peremptory writ of mandate issue, directing respondent to vacate its order of September 1, 1989, in Los Angeles Superior Court case No. C 537579, entitled Hernandez v. County of Los Angeles et al., which denied

the county's motion for protective order and to disqualify plaintiff's counsel, granted plaintiff's motion to augment his expert witness list to include Dr. Verity, and awarded plaintiff $750 in attorney fees and to make a new and different order (1) granting the County's motion barring plaintiff from designating Dr. Verity as his expert witness; (2) granting the County's motion to recuse Mr. Gantz and Mr. Rackohn from representing plaintiff; and (3) striking the $750 attorney fee award. As to the County's request regarding plaintiff's other expert witnesses, the court is directed to determine whether any of plaintiff's expert witnesses were told of Dr. Verity's opinion and, in response, changed their opinion. The alternative writ is discharged, and the stay of the proceedings is ordered lifted.

Woods (A. M.), P. J., and George, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied October 11, 1990. Mosk, J., Eagleson, J., and Kennard, J., were of the opinion that the petition should be granted.