Filed 6/27/13

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN MICHAEL DELUCA et al., | B240597 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. BC353346 & NC041884) |
| v. | |
| STATE FISH CO., INC., a California corporation, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County,

Ross M. Klein, Judge.  Reversed.

Law Offices of John A. Schlaff and John A. Schlaff; Vakili & Leus and

Sa'id Vakili for Plaintiff and Appellant.

Law Offices of Michael Leight and Michael Leight for Defendant and

Respondent.

Following trial and appeal in cross-actions, a single cause of action remained for trial between the parties. The plaintiff in the remaining action informed the defendant that he would be using, as an expert witness, an expert who had testified on behalf of the defendant in the prior trial. The defendant objected, on the ground that the expert possessed confidential attorney-client and work product information, learned when retained on behalf of the defendant. The defendant then moved to disqualify plaintiff's counsel from further representing plaintiff, on the basis that plaintiff's counsel had obtained access to the confidential information possessed by the expert. The trial court granted the motion and disqualified plaintiff's counsel. On appeal by the plaintiff and his disqualified counsel, we conclude that the defendant failed in its burden to establish the expert possessed confidential information materially relevant to the pending proceedings. We therefore will reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Underlying Action*

The attorney disqualification issue arose in the context of a dispute between State Fish Company, Inc. (State Fish), a seafood business owned and operated by the DeLuca family, and John DeLuca, a former director of State Fish who has since opened a competing seafood business. More particularly, the instant litigation involved a dispute over the ownership of a fish storage, packing, and processing plant known by the parties as "Plant 2." Both State Fish and DeLuca claimed ownership of Plant 2.

It was undisputed that, for approximately 15 years, while DeLuca was affiliated with State Fish, State Fish paid DeLuca $30,000 per month rent for Plant 2. In 2004,

2

DeLuca obtained an appraisal of Plant 2, to determine the fair market rent of the plant. The written appraisal calculated the fair market rent as of January 1, 2004 to be $45,453 per month, and indicated a minimum increase of 3% per year. Based on this appraisal, DeLuca gave State Fish notice of a rent increase, effective January 1, 2005, to $46,800.[1] State Fish refused to pay the increased rent.

Although the notice of rent increase set in motion DeLuca's departure from State Fish, his actual departure was delayed for various reasons. On May 1, 2006, DeLuca served State Fish with a 30-day notice to quit, terminating its tenancy at Plant 2. A 3-day notice to quit followed on May 26, 2006. On June 2, 2006, when State Fish had not vacated the premises, DeLuca filed an unlawful detainer action, seeking possession of Plant 2 and its fair rental value from June 1, 2006.

On August 2, 2006, State Fish filed a multi-count complaint against DeLuca, for, among other things, rescission of the deed to Plant 2 and breach of the corporate opportunity doctrine. The cases were deemed related and eventually consolidated.

The actions proceeded to trial. At trial, State Fish took the position that DeLuca held only nominal title to Plant 2. It further argued that DeLuca had violated the corporate opportunity doctrine by taking title to Plant 2. As is relevant to the instant dispute, State Fish offered testimony of Leo Vusich, an industrial real estate broker. Vusich testified to the unique qualities of Plant 2 and its critical importance to State Fish's business. He testified that, if State Fish were to build a similar facility, it would

---

[1] The appraised 2004 rent of $45,453, plus a 3% increase for the next year, would be $46,817.

take two years, cost upwards of $16 million, and would not be located as well as Plant 2. In cross-examination by DeLuca's counsel, Vusich was asked to determine the fair market rent for a facility such as Plant 2; he testified that $70,000 per month would be reasonable. When presented with the hypothetical of being asked his advice if offered the opportunity to rent Plant 2 for $46,800 per month, he replied, "Great deal." In other words, Vusich, as State Fish's expert, indicated a fair rental value for Plant 2 which was substantially higher than the amount indicated by DeLuca's appraiser. Vusich not only confirmed that DeLuca's appraiser's valuation of the fair rental value was reasonable; his testimony strongly implied that DeLuca's appraiser had undervalued the property.

At the close of evidence, State Fish decided it wished to waive jury and/or proceed solely on its causes of action in equity. The trial court then severed and declared a mistrial in DeLuca's unlawful detainer action, and excused the jury.

The trial court then ruled in favor of State Fish, concluding that DeLuca had violated the corporate opportunity doctrine, and rescinding the deed in favor DeLuca. DeLuca appealed and we reversed, concluding that the trial court erred in its application of the corporate opportunity doctrine. We further concluded that DeLuca had established the defense of laches as a matter of law, and was therefore entitled to judgment in his favor. We therefore remanded for a retrial on DeLuca's mistried complaint for unlawful detainer.

4

2.    *DeLuca Retains Vusich on Remand*

Our remittitur issued on September 26, 2011.  As several years had passed since the initial trial, it was necessary for DeLuca and his experts to reinspect Plant 2, in order to reevaluate it for the unlawful detainer retrial.  In the course of scheduling the inspection of Plant 2, DeLuca's counsel indicated to State Fish's counsel that Vusich would be inspecting Plant 2 on DeLuca's behalf.

State Fish's counsel immediately objected, on the basis that Vusich had been State Fish's expert and was prohibited from switching sides in the litigation.  Numerous letters were exchanged among counsel,[2] and the scheduled inspection of Plant 2 was cancelled by State Fish, until such time as the dispute regarding Vusich could be resolved.

The inspection was cancelled on December 27, 2011; the trial was set for February 14, 2012.  DeLuca intended to bring discovery motions, including a motion to reset the cancelled inspection.  On January 10, 2012, DeLuca brought an ex parte application to specially set his discovery motions as soon as possible.  DeLuca noted that the earliest date the court could give him was January 31, 2012, which was too

---

[2]    DeLuca was represented by several attorneys at different firms.  He took the position that his rescission counsel was different from his unlawful detainer counsel. He would subsequently take the position that only one of his attorneys spoke with Vusich, so, if anyone should be disqualified for that communication, it should be that attorney alone.  The trial court disagreed, on the basis that all of DeLuca's attorneys appeared to be involved in the exchange of correspondence regarding Vusich, which gave rise to the inference that DeLuca's attorneys all communicated amongst themselves, and that confidential information conveyed by Vusich to one attorney would have been communicated to the other attorneys.  As we will conclude that State Fish did not bear its initial burden on the motion to disqualify counsel, we need not reach the issue of whether the disqualification order was overbroad.

5

close in time to the trial date to enable him to move for summary adjudication following discovery.[3] On January 11, 2012, the court denied the motion, leaving DeLuca's discovery motions set on January 31, 2012. The court further added[4] that, should State Fish seek to file a motion to disqualify DeLuca's counsel, such a motion should also be set for January 31, 2012. The court set a shortened briefing schedule for such a motion.[5]

### 3. *State Fish's Disqualification Motion*

Pursuant to the briefing schedule set by the trial court, State Fish filed its motion to disqualify DeLuca's counsel on January 17, 2012.[6] The motion was supported by a declaration of State Fish's counsel, Attorney Michael Leight, which stated the

---

[3] Discovery motions are normally heard on five days' notice in unlawful detainer cases. (Code Civ. Proc., § 1170.8.) DeLuca wanted his motions to be heard after the statutory five days; he simply could not obtain such an early hearing date due to court congestion.

[4] The record on appeal does not contain the reporter's transcript from the hearing on DeLuca's ex parte request. Therefore, it is unclear whether the court made the additional ruling on its own motion or on request from State Fish's counsel.

[5] On appeal, DeLuca argues that the trial court erred in hearing the disqualification motion on shortened notice. As we resolve the appeal in DeLuca's favor on the merits of the disqualification motion, we need not reach the issue. However, we note that, given DeLuca's failure to designate a reporter's transcript of the hearing at which the court set the shortened briefing schedule, DeLuca has failed to provide an adequate record for review of the issue.

[6] The motion also sought to prevent State Fish's new counsel "from directly or indirectly communicating with Leo Vusich regarding any issues in this case." The overbreadth of this request is immediately apparent. Vusich had already testified in the mistried unlawful detainer action, giving testimony favorable to DeLuca. The order sought by State Fish would prevent him from giving that very same testimony at the retrial. As we shall discuss, there is no legal reason Vusich should have been prevented from testifying at the unlawful detainer retrial.

6

following course of events. On July 19, 2006,[7] Attorney Leight first contacted Vusich advising him of Attorney Leight's desire to retain him as a *consultant* to assist with preparation in the consolidated cases.[8] Thereafter, Attorney Leight had a number of telephone conversations with Vusich where he "asked for Mr. Vusich's advice, and consultation, concerning issues in the consolidated cases."[9] During those conversations, Attorney Leight "also disclosed to Mr. Vusich some of [his] own impressions, conclusions, opinions and theories about certain issues in the consolidated cases." Thereafter, Attorney Leight associated Attorney Mitchell Stein to assist in the representation of State Fish in the consolidated cases, and it was Attorney Stein, not

---

[7] Both the motion and Attorney Leight's declaration refer to July 19, 2006 as the date of Attorney Leight's initial communication with Vusich. DeLuca suggests the date was actually July 16, 2006. It is unclear on what basis DeLuca uses the earlier date.

[8] As we shall discuss, Vusich and DeLuca dispute whether Vusich was ever retained by State Fish as a *consultant*, as opposed to a testifying expert. We note that neither party ever presented to the trial court Attorney Leight's July 19, 2006 letter, which would, presumably, resolve the issue. In any event, DeLuca would subsequently note (in a motion for reconsideration) that, at the time of Attorney Leight's July 19, 2006 letter, trial was originally set in the unlawful detainer action for July 20, 2006, the *very next day*, strongly suggesting that Vusich was retained as a testifying expert, not a consultant. While this is persuasive evidence, it is not controlling, and the trial court was free to disregard the inference in favor of Attorney Leight's declaration to the contrary. We do note, however, that Attorney Leight could not possibly have written Vusich in July 2006 regarding his desire to retain Vusich "to assist . . . in connection with [his] representation of State Fish in *the consolidated cases,*" as stated in his declaration. (Italics added.) State Fish did not file its rescission complaint against DeLuca until August 2, 2006; the actions were consolidated sometime later. Thus, there were no consolidated cases in July 2006.

[9] Interestingly, Attorney Leight's declaration does not state that Vusich *provided* such advice.

7

Attorney Leight, who subsequently decided to retain Vusich to testify at trial.[10]

Attorney Stein designated Vusich as an expert on October 29, 2007. In addition to his discussions with counsel as an expert, Vusich had been contacted directly by State Fish, *prior* to the initial contact by Attorney Leight, and had been "communicating with State Fish personnel regarding State Fish's business operations, need for facilities, etc."[11] In the course of his work for State Fish, Vusich came into possession of "confidential, proprietary information of State Fish, regarding how State Fish conducts its business, and what its real estate needs are in connection with conducting its business." While other declarations and exhibits were submitted in connection with the motion, there were no declarations further describing, in any way, the purported confidential information communicated to Vusich.[12]

---

[10] Attorney Leight's declaration states that Attorney Stein was given the responsibility of retaining experts "for trial of the rescission portion of the consolidated cases." We note that the cases remained consolidated during trial, until after the close of evidence, when the trial court declared a mistrial in the unlawful detainer action. In other words, there was no distinction between the "rescission portion" and the unlawful detainer portion of the consolidated cases at the time of the expert designation; the cases were being simultaneously tried. Indeed, the declaration of counsel accompanying the designation of Vusich as an expert indicated that Vusich would "discuss and explain the costs that landlords are charging to rent cold storage facilities . . . . " This issue was clearly not exclusively related to the rescission portion of the consolidated cases, but related to the unlawful detainer action as well.

[11] While the record is not entirely clear, it appears that, at some point in 2006, Janet Esposito of State Fish contacted Vusich for assistance in learning about the availability of other fish processing plants, perhaps in light of the fact that DeLuca had raised the rent on Plant 2 and indicated an intention to evict State Fish.

[12] Both Attorney Leight and Esposito subsequently submitted declarations in support of their reply in connection with the disqualification motion. The trial court expressly did not rely on these declarations in making its ruling. In any event, the

8

### 4. *DeLuca's Opposition*

In opposition to the disqualification motion,[13] DeLuca submitted a declaration from Vusich indicating that he had been retained as a *testifying* expert, not as a consulting expert. Vusich stated that, at his deposition prior to the consolidated cases, he had testified that he had spoken with Attorney Leight only once prior to being designated as an expert, and confirmed that this testimony had been true. He further stated that he had no recollection of any conversations in which Attorney Leight sought his advice and consultation. Vusich also stated that he had no recollection of any telephone calls in which Attorney Leight disclosed to him his impressions, conclusions, opinions and theories. Vusich testified that he agreed to testify for DeLuca in the retrial as he was familiar with Plant 2 and his testimony would be the same regardless of which party hired him. He stated that he did not share any of Attorney Leight's purported

declarations indicate that, at times, Attorney Leight conveyed confidential information to Esposito and other State Fish officers, and that Esposito sometimes spoke with Vusich on behalf of Attorney Leight. The declarations do not specifically indicate Esposito conveyed any of Attorney Leight's confidential information to Vusich. In any event, in discussing the confidential information, the declarations do not specify any confidential information discussed beyond Attorney Leight's "impressions, conclusions, opinions and theories about certain issues in the consolidated cases."

[13] In addition to the evidence to be discussed above, DeLuca submitted evidence intended to challenge the credibility of Attorney Leight. The trial court sustained objections to all of this evidence. On appeal, DeLuca briefly argues the trial court erred in sustaining the objections, arguing that, by disregarding the evidence challenging Attorney Leight's credibility, the trial court, in effect, created an irrebuttable presumption in favor of Attorney Leight. We disagree. The trial court weighed the testimony of Attorney Leight and Vusich and specifically concluded that Attorney Leight was more credible. In any event, DeLuca does not address any of the specific grounds on which the objections were sustained, including relevance, hearsay, and lack of foundation. Any argument that the objections were improperly sustained is therefore considered waived.

impressions, conclusions, opinions and theories about the case with DeLuca's counsel, and could not have done so, because he was not privy to such information.

5. *Reply*

In reply in support of the disqualification motion, State Fish submitted additional evidence which, as noted above, the trial court disregarded.[14] State Fish also argued that DeLuca and his counsel had conspired with Vusich to breach Vusich's duty of loyalty to State Fish, which arose from Vusich's employment by State Fish.

6. *Subsequent Filings*

DeLuca then filed, on the day of the hearing, evidentiary objections. DeLuca also filed supplemental declarations in support of his opposition. The trial court disregarded all of these filings as untimely.

7. *Hearing and Ruling*

After a hearing, the trial court issued a written opinion granting the motion to disqualify DeLuca's counsel. The court specifically concluded that Attorney Leight was more credible than Vusich, and therefore concluded that Attorney Leight conveyed confidential work product to Vusich. While the trial court recognized that the attorney-client privilege was waived with respect to the basis for Vusich's opinions

---

[14] We do note, however, one significant piece of evidence. State Fish submitted Vusich's invoice to Attorney Stein, dated September 22, 2008. The invoice has a line item for "8-3-06-present," indicating "[v]arious telephone conferences over several dates with [Attorney] Stein and [Attorney] Leight re. State Fish Co." State Fish relied on this invoice as confirmation that Vusich had several calls with Attorney Leight. DeLuca, however, noted that the line item billed for "1.0" hours only, suggesting that, over a two year period, Vusich had only a total of one hour worth of phone calls with both Attorney Leight and Attorney Stein.

once it became certain that Vusich would testify at the prior trial, the court concluded that "it is both logical and reasonable that [Attorney] Leight imparted work product to . . . Vusich that went beyond the formation of an opinion." The court specifically concluded that Vusich "knows the strategies that [Attorney] Leight planned and that goes beyond the basis for his expert opinion. It is work product." The court also concluded that Vusich was not merely a consultant and trial expert, but had also been engaged privately by State Fish prior to this litigation, where he was privy to further confidential information. As Vusich was privy to confidential information "both inside and outside of this litigation," a rebuttable presumption arose that DeLuca's counsel was also in possession of that information. Therefore, the court concluded, DeLuca's counsel must be disqualified.

8.     *Motion for Reconsideration*

DeLuca then moved to vacate the court's disqualification order as void, or for reconsideration of the order. DeLuca relied on case authority on which he had not relied in opposition to the motion, and on facts he had not previously placed before the trial court.[15] DeLuca argued that he had not presented this information earlier because of the shortened briefing schedule for the disqualification motion, and argued that the shortened briefing schedule worked a denial of due process. The trial court denied the motion. The court found no due process violation, as DeLuca had notice and a reasonable opportunity to be heard, and could have sought a brief continuance had he

---

[15]     Specifically, DeLuca had not previously realized that Vusich had been retained just days prior to the initial trial date.

11

felt one was necessary. The court further found that DeLuca had failed to meet his burden of showing new or different facts or law.

9.  *Subsequent Events*

DeLuca and two of his attorneys filed a timely notice of appeal.[16] While this appeal was pending, the case proceeded to trial on DeLuca's unlawful detainer action. Judgment was entered in favor of DeLuca. The trial court declared that DeLuca owns "the entire full fee simple interest" in Plant 2. State Fish's lease was ordered terminated, and State Fish was ordered to vacate possession on a date mutually agreed. The court awarded DeLuca damages in the amount of $794,166.

On November 6, 2012, State Fish filed a notice of appeal from the unlawful detainer judgment. (B245049) On November 28, 2012, DeLuca filed a notice of cross-appeal.[17]

---

[16] Although DeLuca and his attorneys both appealed from the disqualification order, we refer to the appellants collectively as "DeLuca." The notice of appeal does not appear in DeLuca's appendix, although it is required to be included. (Cal. Rules of Court, rules 8.122(b)(1)(A), 8.124(b)(1)(A).) This is not the only rule violation with respect to the appellants' appendix. An appellant's appendix, like a clerk's transcript, is to use one side of the paper only (Cal. Rules of Court, rules 8.144(a)(2), 8.124(d)(1)); the appellants' appendix in this case is double-sided. We have nonetheless accepted the appellants' appendix for filing, in the interests of judicial economy. We also note that several pages appear to be missing from DeLuca's appendix. For example, Exhibit 3 to the disqualification motion purports to be a reporter's transcript of the entirety of Vusich's trial testimony. However, three pages – those numbered 3991, 3993, and 3997 – are missing from the appellants' appendix. Page 4 of DeLuca's opposition to the disqualification motion is also missing. Although State Fish filed a respondent's appendix, it did not provide this court with any of the missing pages, nor the missing notice of appeal.

[17] In his reply brief on appeal, DeLuca indicates that he would be filing a request for judicial notice and a request for this court to take evidence – both requests would

12

## ISSUES ON APPEAL

Preliminarily, we will address, and reject, State Fish's argument that this appeal is moot, given that the unlawful detainer action has proceeded to judgment. Then, we will proceed to the merits of the disqualification order. There are three types of confidential information, allegedly possessed by Vusich, which formed the basis of the disqualification motion: (1) confidential information obtained by Vusich when employed by State Fish prior to contact by Attorney Leight; (2) confidential information obtained by Vusich when employed by Attorney Leight as a consultant, but prior to his designation as a testifying expert; and (3) confidential information obtained by Vusich as a testifying expert. We conclude that the first category of information is not confidential, and that the second and third categories cannot be separated once Vusich was designated as a testifying expert. Once that occurred, any confidentiality with respect to both categories of information was waived. Moreover, even if information in the second category is considered confidential and could provide a basis for a disqualification motion, such information could only provide a basis for a disqualification motion if it was materially related to the pending proceedings. As Attorney Leight's declaration provided no basis for the trial court to conclude that any confidential information transmitted to Vusich was obtained by Vusich as a consultant

---

apparently relate to "the post-trial status of the conflicts among the various parties to this appeal." DeLuca subsequently filed a request for judicial notice, which we have granted in part. On our own motion, we have also taken judicial notice of the filing of the notices of appeal of the unlawful detainer judgment.

only, and was materially related to the pending proceedings, we conclude that State Fish failed to meet its burden as moving party on the disqualification motion.

## *DISCUSSION*

### 1. *This Appeal Is Not Moot*

State Fish argues that, as the unlawful detainer action has been resolved (and resolved in favor of DeLuca), the appeal is moot. This is not so. Both parties have appealed the unlawful detainer judgment. As such, there is no *final* judgment. Our disposition of the instant appeal will determine whether the attorneys who represented DeLuca prior to the disqualification order should be permitted to represent him in the ongoing appellate proceedings, and in any proceedings on remand, should one occur. We will therefore address the merits of this appeal.

### 2. *Standard of Review*

The trial court's decision on a motion for disqualification is usually reviewed for abuse of discretion. (*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 218.) The court's discretion is limited by the applicable legal principles and is subject to reversal when there is no reasonable basis for the action. (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832.) "[W]here there are no material disputed factual issues, we review the trial court's determination as a question of law, and we defer to a trial court's express or implied factual decisions on disputed factual issues only if that decision is supported by substantial evidence. Importantly, although an inference can serve as substantial evidence for a finding, ' "the inference must be a reasonable conclusion from the evidence and cannot be based upon suspicion,

14

imagination, speculation, surmise, conjecture or guesswork.  [Citation.]  Thus, an inference cannot stand if it is unreasonable when viewed in light of the whole record.  [Citation.]"  [Citation.]' " (*Shandralina G. v. Homonchuk* (2007) 147 Cal.App.4th 395, 411.)

3.      *Burden On A Disqualification Motion*

"The trial court's power to disqualify counsel is derived from the court's inherent power '[t]o control in furtherance of justice, the conduct of its ministerial officers.'  [Citations.]  Disqualification motions implicate several important interests, among them are the clients' right to counsel of their choice, the attorney's interest in representing a client, the financial burden of replacing a disqualified attorney, and tactical abuse that may underlie the motion.  [Citation.]  The 'paramount' concern in determining whether counsel should be disqualified is 'the preservation of public trust in the scrupulous administration of justice and the integrity of the bar.'  [Citations.]  It must be remembered, however, that disqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety."  (*Roush v. Seagate Technology, LLC, supra,* 150 Cal.App.4th at pp. 218-219.)

When a party moves to disqualify opposing counsel based on allegedly improper contact between opposing counsel and the movant's expert witness, "the party seeking disqualification has the burden to show that the expert possesses confidential information materially related to the proceedings before the court.  The moving party's initial burden does not require the party to disclose the actual information contended to

15

be confidential. ' "However, the court should be provided with the nature of the information and its material relationship to the proceedings." ' [Citation.] ' "Once this showing has been made, a rebuttable presumption arises that the information has been used or disclosed in the current employment." ' [Citation.]" (*Roush v. Seagate Technology, LLC, supra,* 150 Cal.App.4th at p. 220; *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 596.)

      4.      *Confidential and Privileged Information*

Before turning to the specific issues relating to expert witnesses raised by this case, it is useful to briefly discuss the types of confidential and privileged information at issue. We are concerned with confidential business information given employees, information subject to the attorney-client privilege, and work product information.

      a.      *Confidential Business Information*

Our discussion of the first category of information, confidential business information given employees, need not detain us long. State Fish takes the position that Vusich acquired confidential information from State Fish when employed by State Fish prior to the time Attorney Leight contacted Vusich. Yet Vusich was never an employee of State Fish in the traditional sense. Vusich was, at most, an independent contractor of State Fish. Vusich is an industrial real estate broker; he was contacted by Esposito to assist State Fish in, as Vusich testified at deposition, "gathering information about the availability of . . . seafood processing plants in the Southern California port area." Vusich talked with Esposito "about industrial properties, plant properties available in the greater Southern California area." While a former employee of a corporation may

owe the corporation a duty of confidentiality, especially if the relationship was formalized in a written confidentiality or non-competition agreement, no such relationship existed in this case. Vusich was simply a real estate broker consulted by State Fish. State Fish presents no authority supporting its implicit contention that the real estate broker/client relationship gives rise to a duty of confidentiality, and independent research has disclosed none. Thus, there is no protection provided by the law for any conversations between Vusich and Esposito in connection with Vusich's work for State Fish prior to the time he was contacted by State Fish's counsel. That Vusich or Esposito may have subsequently discussed the same information with State Fish's counsel does not change the result. " '[A] communication which was not privileged to begin with may not be made so by subsequent delivery to the attorney. [Citation.]' [Citation.]" (*Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp.* (1992) 6 Cal.App.4th 1256, 1265.) " ' "[A] litigant cannot silence a witness by having him reveal his knowledge to the litigant's attorney." ' [Citations.]" (*Jasper Construction, Inc. v. Foothill Junior College District* (1979) 91 Cal.App.3d 1, 17.) To the extent the trial court concluded that State Fish conveyed confidential information to Vusich prior to the time Attorney Leight first consulted with Vusich, the court was in error. Any such information, therefore, would not support the disqualification order.

        b.     *Attorney-Client Privileged Information*

The second category of confidential information at issue is information subject to the attorney-client privilege. This privilege is codified in the Evidence Code. It

17

protects "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Evid. Code, § 952.) The attorney-client privilege is lost, however, when the holder of the privilege has "disclosed a significant part of the communication or has consented to disclosure made by anyone." (Evid. Code, § 912.)

> c. *Work Product Information*

The third type of confidential information at issue in this case is work product. While it is often spoken of as a "privilege," the work product rule is, in fact, a limitation on pretrial discovery. (*Jasper Construction, Inc. v. Foothill Junior College District, supra,* 91 Cal.App.3d at p. 16; see Code Civ. Proc., § 2018.010 et seq.) The purpose of the doctrine is twofold: (1) to preserve the rights of attorneys to prepare for trial with the degree of privacy necessary to encourage them to prepare thoroughly and investigate unfavorable as well as favorable aspects of their cases; and (2) to prevent an attorney from taking undue advantage of opposing counsel's efforts. (*Kizer v. Sulnick* (1988) 202 Cal.App.3d 431, 441.) There are two parts to work product protection. First, a "writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstance." (Code Civ. Proc.,

18

§ 2018.030, subd. (a).) There are no writings of this type at issue in the case. Second, there is a conditional protection for all other types of attorney work product. This work product is not discoverable "unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice."[18] (Code Civ. Proc., § 2018.030, subd. (b).) Although there is no statutory provision defining waiver of the work product protection, waiver "is generally found under the same set of circumstances as waiver of the attorney-client privilege—by failing to assert the protection, by tendering certain issues, and by conduct inconsistent with claiming the protection.' [Citation.]" (*Roush v. Seagate Technology, LLC, supra,* 150 Cal.App.4th at p. 222.)

     5.     *Consulting and Testifying Experts*

     We now turn to the application of the attorney-client privilege and work product protection to communications between counsel and an expert witness. An expert witness may be a consulting expert, retained only to assist counsel in the preparation of the case. Alternatively, an expert may be a testifying expert, retained only to give a professional opinion at trial. In many cases, an expert is retained both to consult and to testify.

     If the expert is solely retained as a consulting expert, the attorney-client privilege applies to communications made by the client or the attorney to the expert in order for the expert to properly advise counsel. As noted above, the attorney-client privilege

---

[18]     Cases describe this showing as " 'good cause.' " (*National Steel Products Co. v. Superior Court* (1985) 164 Cal.App.3d 476, 487.)

applies to communications "to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted" (Evid. Code, § 952); this clearly includes communications to a consulting expert. (*Roush v. Seagate Technology, LLC, supra,* 150 Cal.App.4th at p. 225; *Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067, 1078-1079.) Similarly, a consulting expert's report, prepared at the attorney's request and with the purpose of assisting the attorney in trial preparation, constitutes work product (*Williamson v. Superior Court* (1978) 21 Cal.3d 829, 834), entitled to conditional protection and barred from discovery in the absence of good cause. (*Kizer v. Sulnick, supra,* 202 Cal.App.3d at p. 440.)

The situation is different, however, with a testifying expert. As a general rule, neither the attorney-client privilege nor the work product protection will prevent disclosure of statements to, or reports from, a testifying expert. When a client calls that party's attorney to testify at trial to information the attorney could have only learned through the attorney-client privilege, the privilege is waived. "It follows that the same waiver exists when an *agent* of the attorney is to testify to matters that he could only have learned because of the attorney-client relationship." (*National Steel Productions Co. v. Superior Court, supra,* 164 Cal.App.3d at p. 484.) Once a testifying expert is designated as a witness, the attorney-client privilege no longer applies, "because the decision to use the expert as a witness manifests the client's consent to disclosure of the information." (*Shadow Traffic Network v. Superior Court, supra,* 24 Cal.App.4th at p. 1079.) Similarly, when an expert witness is expected to testify, the expert's report,

which was subject to the conditional work product protection, becomes discoverable, as the mere fact that the expert is expected to testify generally establishes good cause for its disclosure.[19] (*Williamson v. Superior Court, supra,* 21 Cal.3d at pp. 834-835.)

The issue becomes more complex, however, when the expert is *both* a consulting and a testifying expert. "To complicate his position, the expert normally wears two hats. He is employed by counsel to form an opinion which he may later present as a witness in court. He is also engaged as an adviser on trial preparation and tactics for the case and in this latter capacity serves as a professional consultant to counsel on the technical and forensic aspects of his specialty. From the point of view of counsel, the expert's freedom to advise counsel, to educate counsel on the technical problems of his case, to prepare him to handle unfamiliar data in court, to analyze the availability of expert opinion and the need for its use, all without hindrance from the opposing side, are important elements of counsel's privacy of preparation. Consultation between expert and counsel may appropriately be given broad immunity from discovery, both as to expert and as to counsel, because none of the expert's opinion, professional though it may be, is relevant evidence in the case. To the contrary, his opinion is and will remain wholly irrelevant and immaterial as evidence until the expert is called as a witness on the trial and shown to be qualified to give competent opinion testimony on a matter in which he is versed and which is material to the case. [Citation.]" (*Swartzman v. Superior Court* (1964) 231 Cal.App.2d 195, 202-203.) "Nevertheless the initial status

---

[19] Indeed, discovery statutes now provide for the mutual exchange of testifying experts' reports. (Code Civ. Proc., § 2034.210, subd. (c).)

21

of the expert, as consultant and possible witness, changes its character at that point in the suit when it has become known he will actually testify as a witness. When it becomes reasonably certain an expert will give his professional opinion as a witness on a material matter in dispute, then his opinion has become a factor in the cause. At that point the expert has ceased to be merely a consultant and has become a counter in the litigation, one to be evaluated along with others. Such evaluation properly includes appropriate pretrial discovery. [Citations.]" (*Id.* at p. 203.)

Case authority has drawn a bright line at the point where it becomes reasonably certain that the expert will testify – holding that the attorney-client privilege and work product protection apply prior to the point, but not subsequent to it. (See, e.g., *People v. Milner* (1988) 45 Cal.3d 227, 241; *Williamson v. Superior Court, supra,* 21 Cal.3d at pp. 834-835; *Sanders v. Superior Court* (1973) 34 Cal.App.3d 270, 278-279.)

However, an exception has been carved out when a party seeks *pre-trial discovery* of the *written report* of an expert which contains both: (1) information relevant to the opinion the expert will give as a testifying expert; and (2) the expert's advice on trial preparation matters, conveyed as a consulting expert.[20] "[T]he mere fact the expert may have the dual status of a prospective witness and of adviser to the attorney, does not remove the product of his services rendered exclusively in an

---

[20]    Information relevant to the opinion the expert will give as a testifying expert includes the expert's "findings and opinions . . . that go to the establishment or denial of a principal fact in issue"; while information rendered as a consulting expert includes information "designed to assist the attorney in such matters as preparation of pleadings, the manner of presentation of proof, and cross-examination of opposing expert witnesses." (*National Steel Products Co. v. Superior Court, supra,* 164 Cal.App.3d at p. 489.)

advisory capacity, as distinguished from the product of services which qualify him as an expert witness, from the work product limitation upon discovery." (*Scotsman Mfg. Co. v. Superior Court* (1966) 242 Cal.App.2d 527, 531.) In other words, an expert's opinion regarding the subject matter about which the expert is a prospective testifying expert is discoverable, but the expert's advice rendered to the attorney in an advisory capacity is still subject to conditional work product protection. (*Ibid.*) Therefore, when an expert's written report was prepared both as a consulting expert and a testifying expert, a trial court is often required to conduct an *in camera* review of the report, to separate out the information provided as a consultant from the information provided a testifying expert. The latter information is discoverable; the former is discoverable only a showing of good cause.[21] (*National Steel Products Co. v. Superior Court, supra,* 164 Cal.App.3d at pp. 489-490.)

We emphasize that the above discussion relates only to the pretrial discovery of an expert's opinions and, specifically, the expert's report. At issue in this case is not the discoverability of Vusich's report,[22] but whether DeLuca's counsel was properly disqualified for retaining Vusich's services for the retrial.

---

[21] Should the report reflect the *attorney's* impressions, conclusions, opinions, legal research or theories, such information is subject to the absolute work product protection and is not discoverable at all.

[22] Indeed, there is no suggestion that Vusich ever prepared a written report.

23

6.    *When Counsel May Be Disqualified for Contact with an Opposing Party's Expert*

A party moving to disqualify opposing counsel for improper contact with the moving party's expert must establish that the expert possesses confidential information materially related to the proceedings before the court. Once this showing has been made, it gives rise to a rebuttal presumption that the information has been disclosed to opposing counsel.

In very broad terms, a consulting expert's opinions are confidential, while a testifying expert's opinions are discoverable. Because of this, it has been held that when one party's attorney has had contact with the opposing party's consulting expert, the attorney may be disqualified. (*Collins v. State* (2004) 121 Cal.App.4th 1112, 1117, 1126-1127; *County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 650, 657-658.) However, as a testifying expert's opinions are no longer subject to the attorney-client privilege or work-product protection—particularly when, as in this case, the expert has already testified—the expert is not in possession of any confidential information and there is therefore no reason that opposing counsel cannot retain the expert.

State Fish, however, argues that the distinction is not so straightforward when the expert served in both consulting and testifying capacities. Relying on authority governing the partial conditional protection remaining for *expert opinions* given in the capacity of a *consultant* in the *written report* of an expert serving in dual capacities, State Fish argues that opinions of *counsel orally conveyed* to the dual-capacity expert in

24

the course of discussions with the expert in his consultant capacity similarly retain their confidential work-product protection. There is no authority for this proposition, and it is contrary to existing law. The case authority which provides that the work product protection terminates once an expert is reasonably certain to testify is based on the premise that the expert began as a consulting expert and later became a testifying expert. (E.g., *Williamson v. Superior Court, supra,* 21 Cal.3d at pp. 834-835; *County of Los Angeles v. Superior Court, supra,* 222 Cal.App.3d at pp. 654-655.) An exception to this rule providing that work product information conveyed to the expert as a consultant remains protected would swallow the rule in its entirety. Moreover, practical considerations weigh against adopting such an exception. A written report can be redacted and partially disclosed. State Fish, however, would bar opposing counsel from all contact with a dual-capacity expert witness simply because the expert has heard some protected work product information. Moreover, any work-product protection for such orally-conveyed information is conditional, not absolute. The party who seeks contact with the dual-capacity expert will have a strong argument that good cause exists to overcome the conditional privilege, given the party's undisputed right to discuss with the dual-capacity expert all information relayed to (and from) the expert in his testimonial capacity. There is good reason for a general rule that the conditional protection for *any* attorney work-product conveyed to an expert has no application once the expert is likely to testify. Indeed, any time an attorney speaks with a testifying witness – percipient or expert – the attorney discloses some amount of work product, in the fact of the conversation and the matters discussed. This act of disclosure does not

25

mean that the witness possesses confidential information which prevents opposing counsel from speaking privately with the witness. Instead, disclosing such information to the witness acts as a waiver of the work product protection. If an attorney wishes to keep the work product conveyed to a consulting expert protected, the attorney may do so by the simple expedient of *not* designating the expert as a testifying expert.

7. *DeLuca's Counsel Should Not Have Been Disqualified*

Even if attorney work product conveyed to a consulting expert remains subject to work product protection after the expert has been designated as a testifying expert, we conclude that State Fish wholly failed in its burden of establishing that such confidential information materially related to the proceedings before the court was conveyed to Vusich. State Fish provided evidence only that Attorney Leight disclosed to Vusich "some of [his] own impressions, conclusions, opinions and theories about certain issues in the consolidated cases." While we agree that State Fish was not required to disclose to the court the purported work product information he conveyed to Vusich, State Fish was required to provide the court with the nature of the information and its material relationship to the proceedings. It failed to do so.

As to the nature of the information, Attorney Leight did not specify that the "impressions, conclusions, opinions and theories" he conveyed pertained to the subjects on which he sought advice from Vusich as a consultant, and not subjects on which Vusich was ultimately designated to testify.[23] More importantly, Attorney Leight did

---

**23** Attorney Leight never stated that he discussed, for example, ways to cross-examine DeLuca's experts with Vusich.

not suggest, in any way, that the impressions, conclusions, opinions and theories which he conveyed to Vusich *remained* confidential after the initial trial had been completed. The trial court inferred that Vusich "knows the strategies that [Attorney] Leight planned." However, the initial unlawful detainer trial was nearly completed; a mistrial was declared after the close of evidence. Any strategies Attorney Leight planned for the initial trial were very likely revealed during the course of the initial trial; Attorney Leight wholly failed to demonstrate that any of the strategies he conveyed to Vusich remained confidential by the time DeLuca's counsel retained Vusich.

Not only was State Fish required to show that the strategic information Attorney Leight conveyed to Vusich remained confidential after the first trial had been completed, it was also required to show that the strategic information Attorney Leight conveyed to Vusich was materially related to the pending retrial. The rescission portion of the consolidated cases is over; thus, any strategic information Attorney Leight conveyed to Vusich which related to the rescission portion of the consolidated cases is simply not materially related to the unlawful detainer proceedings which were pending before the trial court at the time of the disqualification motion. Yet Attorney Leight declared only that he conveyed to Vusich his thoughts "about certain issues in the consolidated cases." This is insufficient evidence to establish the information was, in fact, on an issue materially related to the pending retrial.

In short, in order to prevail on its disqualification motion, State Fish needed to trigger the rebuttable presumption. In order to do that, State Fish needed to establish that confidential information materially related to the pending proceedings was

27

conveyed to Vusich. No information conveyed by State Fish to Vusich prior to Attorney Leight's contact with Vusich constituted materially related confidential information. No information conveyed by State Fish or Attorney Leight to Vusich which enabled Vusich to prepare the opinions to which he testified constituted materially related confidential information. At best, State Fish would have been required to present evidence that Attorney Leight conveyed to Vusich, in his capacity as a consultant, attorney impressions, conclusions, opinions and/or theories which were materially related to the unlawful detainer retrial, but which were not substantially revealed in the course of the initial unlawful detainer trial. State Fish utterly failed to meet this burden. The trial court therefore erred in granting the disqualification motion.

### *DISPOSITION*

The disqualification order is reversed. DeLuca shall recover his costs on appeal.

***CERTIFIED FOR PUBLICATION***

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

28